UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:14-CV-00179-TBR

ANN CHERRY                                                                                                       Plaintiff

v.

GUY HOWIE, et al,                                                                                             Defendants

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Lynn Pryor's Motion to Dismiss. (Docket No. 10). Plaintiff Ann Cherry has responded, (Docket No. 16), and Defendant has replied, (Docket No. 20). This matter is now ripe for adjudication. For the following reasons, the Court will **GRANT** Defendant's Motion to Dismiss.

## BACKGROUND

Plaintiff Ann Cherry ("Cherry") brought this litigation against various defendants, alleging abuse of process, malicious prosecution, and violation of due process. Cherry served as a Hopkinsville City Councilman. (Docket No. 1). Defendant Guy Howie, ("Howie"), the Chief of Police of Hopkinsville, Kentucky, proposed an ordinance to the City that would require pawn shop owners to use an online service known as "Leads Online," which tracks pawn transactions. Cherry alleges that Leads Online had provided incentives to Police Departments in exchange for Departments getting pawn shops to enter into contractual relationships with Leads Online. Cherry alleges that after "much objection from local pawn shop owners" she tabled the ordinance against Howie's wishes, pending an Ethics Panel Review. *Id.* The Ethics Hearing was scheduled for August 21, 2012 and Cherry was to testify there.

On August 17, 2012, however, Commonwealth Attorney presented testimony from Defendant and Hopkinsville police officer Jefferson Alexander, ("Alexander"), to a grand jury. Alexander testified that Cherry coerced a woman to "change her story" regarding a burglary that took place in Cherry's neighborhood and to state that the burglary suspect the woman saw was black, and not white as she initially claimed. *Id.* Alexander also testified that Cherry "tampered with public records" by allegedly sending a neighbor's private surveillance video of the alleged burglar to the media. The Grand Jury returned felony indictments for tampering with public records and tampering with a witness, and a misdemeanor indictment for official misconduct. The trial was scheduled for November 19, 2013.

Prior to trial, Pryor presented several plea deals to Cherry. The first was in October 2012, "shortly before the November 2012 election, in which Cherry was the incumbent candidate for city council." *Id.* Pryor offered to dismiss all charges if Cherry would "drop out of the election before November 2012 and not run for Mayor or City Council again." Cherry instructed her defense attorney to tell Pryor that Cherry would consider the offer if Pryor would put it in writing. Pryor responded that she would put the offer in writing if Cherry would additionally plead guilty to the misdemeanor. On the morning of trial, Pryor made three offers. The third offer, which Cherry accepted, agreed to dismiss with prejudice all charges if Cherry would agree "to drop off the City Council in January 2014, plus agree not run for Mayor, and not run for the City Council position again." *Id.*

Cherry brings this litigation alleging abuse of process, claiming that the criminal charges were "pursued by each of the defendants because of an ulterior motive and were done without any basis in fact." *Id.* Cherry alleges that the charges were brought in retaliation for Cherry's

refusal to vote for Howie's proposed ordinance. She also alleges a claim of malicious prosecution, and a violation of due process.

Defendant Pryor filed this Motion to Dismiss, claiming that she has immunity from all claims.

## STANDARD

The Federal Rules of Civil Procedure require that pleadings, including complaints, contain a "short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a claim or case because the complaint fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b). When considering a Rule 12(b)(6) motion to dismiss, the court must presume all of the factual allegations in the complaint are true and draw all reasonable inferences in favor of the nonmoving party. *Total Benefits Planning Agency, Inc.*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)). "The court need not, however, accept unwarranted factual inferences." *Id*. (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

Even though a "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Instead, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (citations omitted). A complaint should contain enough facts "to state a claim to relief that is plausible on its face." *Id*. at 570. A claim becomes plausible "when

3

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). If, from the well-pleaded facts, the court cannot "infer more than the mere possibility of misconduct, the complaint has alleged—but has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 1950 (citing Fed. R. Civ. P. 8(a)(2)). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*.

## DISCUSSION

### 1) Abuse of process and malicious prosecution claims

Cherry alleges that Pryor pursued criminal charges against her "because of an ulterior motive" "in retaliation for her refusal to vote for . . . the proposed ordinance" and that Pryor initiated the prosecution "without probable cause and for an improper purpose." *Id.*

Pryor, a state prosecutor, argues that these claims should be dismissed based on her prosecutorial and qualified official immunity. She notes that the Complaint does not allege that Pryor was "involved with the underlying investigation" but simply states that Pryor became involved when presenting the case to the grand jury. (Docket No. 10). Accordingly, her acts occurred in her role as prosecutor, and thus she is immune from suit. Cherry responds that Pryor's acts were discretionary and were not done in good faith, and clarifies that the basis of Cherry's state claims is "the fact that [Pryor] continued to prosecute [Cherry] in the hopes that [Cherry] would plead guilty to some offense." (Docket No. 16).

Kentucky offers absolute immunity and qualified immunity to prosecutors, depending on the circumstances. *Jefferson Cnty. Commonwealth Attorney's Office v. Kaplan*, 65 S.W.3d 916, 920 (Ky. 2002); *Howell v. Sanders*, 668 F.3d 344, 355 (6th Cir. 2012). Kentucky provides absolute immunity for a prosecutor's actions undertaken as an advocate and qualified immunity

4

for those actions under taken as an investigator. *McCollum v. Garrett*, 880 S.W.2d 530, 535 (Ky. 1994). "Qualified immunity in Kentucky, however, still requires a showing of the subjective element of good faith that was rejected under federal law in *Harlow v. Fitzgerald*, 457 U.S. 800, 816–18 (1982)." *Howell*, 668 F. 3d at 355; *Rowan Cnty. v. Sloas*, 201 S.W.3d 469, 474 (Ky. 2006). Qualified immunity is available for "(1) discretionary acts or functions ...; (2) in good faith; and (3) within the scope of the employee's authority." *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001).

In determining whether a prosecutor is afforded absolute immunity, a prosecutor's decision to investigate a crime is not considered to be an investigatory role. *Grant v. Hollenbach*, 8700 F. 2d 1135, 1138-39 (6th Cir. 1989) (internal quotations omitted) ("[I]t is clear that the decision of the prosecutors to investigate a serious criminal charge is protected by absolute immunity. . . . If a prosecutor is held subject to suit for being involved in investigation of evidence brought before a grand jury or a trial jury, he would clearly be inhibited in his duty to submit evidence to the crucible of the judicial process so that the factfinder may consider it.).

Here, Cherry has not alleged that Pryor's wrongful acts occurred when she was serving in an investigatory role. Rather, the alleged wrongful conduct concerns Pryor's role as an advocate at the grand jury and plea bargaining stages of a prosecution. Thus, Pryor is afforded absolute immunity, and these claims must be dismissed.

**2) Violation of due process claim**

Next, Cherry argues that her due process rights were violated when Pryor conspired to charge and prosecute Cherry in violation of 42 U.S.C. §1983. (Docket No. 1). Pryor argues that she is entitled to immunity as she was a government official performing a discretionary function, and that her actions were within her duties as a prosecutor. (Docket No. 10).

A prosecutor is afforded absolute immunity from § 1983 suits for damages when she acts "within the scope of [her] prosecutorial duties." *Grant*, 870 F.2d at 1137, *Imbler v. Pachtman*, 424 U.S. 409, 420 (1976). "Absolute immunity allows a prosecutor to exercise [her] independent judgment in 'deciding which suits to bring and in conducting them in court' based on [her] duty to the public rather than on a fear of potential liability in a suit for damages." *Id*. (internal citations omitted). Absolute immunity is granted when the "challenged activities [were] an integral part of the judicial process." *Imbler*, 424 U.S. at 430.

The Court elaborated upon the absolute immunity principle in *Burns v. Reed*, 500 U.S. 478 (1991). In *Burns*, a prosecutor appeared before a judge to seek a search warrant without disclosing that the plaintiff had "confessed" under hypnosis or that she had later abandoned this confession. After being exonerated, the plaintiff sued the prosecutor under § 1983. The prosecutor claimed that absolute immunity shielded her from such suit. The Court determined that the prosecutor enjoyed absolute immunity for her appearance in the courtroom to present evidence in support of the motion for a search warrant, as such activities were "intimately associated with the judicial phase of the criminal process" and "also connected with the initiation and conduct of a prosecution." *Id*. at 492. The Court acknowledged that "the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom." *Id*. at 486. However, Burns concluded that the prosecutor's advice to law enforcement personnel during the investigative phase was cloaked only in qualified immunity. *Id.* at 495.

The Supreme Court has established a functional approach for determining whether government officials enjoy absolute immunity or the more general standard of qualified immunity. *Id*. at 486. A court must determine "whether the prosecutors have carried their burden

of establishing that they were functioning as 'advocates.'" *Buckley v. Fitzsimmons*, 509 U.S. 259, 274 (1993). State prosecutors enjoy absolute immunity for their conduct "in initiating a prosecution and in presenting the State's case, insofar as that conduct is intimately associated with the judicial phase of the criminal process." *Burns*, 500 U.S. at 479 (internal quotation marks and citations omitted). "[A] prosecutor's decision to initiate a prosecution, including the decision to file a criminal complaint or seek an arrest warrant, is protected by absolute immunity." *Howell*, 668 F.3d at 351 (citing *Imbler*, 424 U.S. at 430–31); *see also Buckley*, 509 U.S. 259 (noting that a prosecutor's actions in evaluating evidence and preparing for presentation at trial or to a grand jury is protected by absolute immunity).

Here, Pryor's alleged wrongful conduct occurred in presenting evidence to the grand jury and in plea bargaining before trial. Her decision to initiate the prosecution is protected by absolute immunity. Further, her actions in offering plea bargains to Cherry were also in an advocacy, not investigatory, role. Thus, Pryor is afforded absolute immunity, and this claims must be dismissed.

## CONCLUSION

For these reasons, and consistent with the Court's conclusions above,

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss, (Docket No. 10), is **GRANTED**. The Clerk is instructed to terminate Lynn Pryor as Defendant in this action.